1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   IN RE VESTAVIA HILLS, LTD, dba          Case No.:  20-cv-01308-GPC-LL
     MOUNT ROYAL TOWERS,                      Adv. No. 20-90073-LA
12
                                Debtor,
13                                            **ORDER:**
14
                                              **(1) VACATING BANKRUPTCY**
15                                            **COURT'S ORDER GRANTING**
                                              **APPELLEE'S MOTION FOR A**
16                                            **PRELIMINARY INJUNCTION; AND**

17   U.S. SMALL BUSINESS
     ADMINISTRATION, and JOVITA              **(2) GRANTING THE SBA'S**
18   CORRANZA, solely as the Administrator   **MOTION FOR WITHDRAWAL OF**
     of the U.S. SBA,                        **THE REFERENCE**
19
                                Appellant,
20
21   v.

22   VESTAVIA HILLS, LTD, dba MOUNT
     ROYAL TOWERS,
23
                                Appellee.
24

25

26       Before the Court are (1) the appeal of Appellants U.S. Small Business

27   Administration ("SBA") and Jovita Corranza, the SBA Administrator, of the June 26,

28   2020 bankruptcy court order granting the motion for a preliminary injunction filed by

                                         1

Appellee Vestavia Hills, Ltd. ("Vestavia"), in Case No. 20-cv-01308-GPC-LL; and (2) the motion for withdrawal of the reference to the bankruptcy court filed by the SBA and the SBA Administrator, in Case No. 20-cv-1824-GPC-LL.

For the reasons set forth below, the Court (1) VACATES the bankruptcy court's order granting Vestavia's motion for a preliminary injunction and (2) GRANTS the SBA's motion for withdrawal of the reference.

## Background

### I.   The CARES Act

On March 27, 2020, in response to the rapidly worsening coronavirus pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Stimulus Act ("CARES Act"), which created the Paycheck Protection Program ("PPP") to be administered by the SBA.  Pub. L. 116-136, 134 Stat. 281 (2020).  Congress placed the PPP within 15 U.S.C. § 636(a), the codification of Section 7(a) of the Small Business Act, which provides the SBA's existing authority to issue loans to small businesses.  However, the CARES Act modified certain requirements of Section 636(a) and greatly expanded eligibility beyond the types of entities that would ordinarily be able to receive a small business loan.  *See* CARES Act § 1102, codified at 15 U.S.C. § 636(a)(36).  The PPP enables the SBA to guarantee loans to small businesses, non-profits, and other entities to allow them to keep employees on their payroll and continue operations during the pandemic.  The CARES Act provides that a borrower can receive a covered loan in an amount not exceeding two and a half times its average monthly payroll costs up to ten million dollars.  15 U.S.C. § 636(a)(36)(E).  Subject to certain limitations, borrowers are eligible to have their PPP loans forgiven to the extent they are used loans for payroll costs or covered mortgage interest payments, rent, and utilities.  15 U.S.C. § 9005(b).

After the adoption of the CARES Act on March 27, 2020, the SBA adopted several interim final rules ("IFRs") in quick succession related to the administration of the PPP, pursuant the emergency rulemaking authority granted by the CARES Act.  15 U.S.C. § 9012 (requiring SBA to issue regulations within 15 days without regard to the notice

requirements of the APA).  On April 3, 2020, the SBA posted its First IFR to the SBA website, which was published in the Federal Register on April 15, 2020.  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020).  The First IFR "outline[d] the key provisions of SBA's implementation of sections 1102 and 1106 of the Act in formal guidance and request[ed] public comment."  *Id.*  The First IFR directed applicants to submit the PPP borrower application form (Form 2483).  *Id.*  Form 2483 requires the applicant to state, among other things, whether the applicant or its owner is presently involved in bankruptcy, and provides that the loan will not be approved if the answer is "yes."  *See* SBA Form 2483: PPP First Draw Borrower Application Form (Version 1), https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form.

The SBA thereafter issued two subsequent IFRs, neither of which had any reference to the bankruptcy exclusion.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20817 (Apr. 15, 2020); Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. 21747 (Apr. 20, 2020).  The Third IFR notes that "the standard underwriting process does not apply because no creditworthiness assessment is required for PPP Loans."  *Id.*  On April 24, 2020, the SBA posted the Fourth IFR to its website, which was published in the Federal Register on April 28, 2020.  Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23450 (Apr. 28, 2020).  The Fourth IFR explicitly states that businesses presently involved in bankruptcy proceedings are not eligible for PPP loans. *Id.*  The Fourth IFR further explains that:

> The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for

PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

*Id.*

Through subsequent legislation, the PPP has been extended and altered several times. *E.g.*, Extending Authority for Commitments for the Paycheck Protection Program & Separating Amounts Authorized, Pub. L. No. 116-147, 134 Stat. 660 (2020); Paycheck Program Flexibility Act of 2020, Pub. L. No. 116-142, 134 Stat. 641 (2020); Paycheck Protection Program & Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020).

## II.     Appellant's Bankruptcy Case and Adversary Proceeding

Appellee Vestavia owns and operates Mount Royal Towers, a senior housing community located at 300 Royal Tower Drive, Vestavia Hills, Alabama.  Adv. No. 20-90073-LA, ECF No. 1 ("Adv. Complaint") ¶ 6.  On January 3, 2020, Vestavia filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code with the U.S. Bankruptcy Court for the Southern District of California.  Bk. No. 20-00018-LA11. Vestavia continued to operate its business while in bankruptcy.  Adv. Complaint ¶ 7.  In April or May of 2020, Vestavia applied through a federally insured participating lender for a loan through the PPP.  *Id.* ¶¶ 21–22.  On May 6, 2020, the lender declined to submit Vestavia's PPP application to the SBA because Vestavia did not meet the "SBA eligibility criteria."  *Id.* ¶ 22.  Vestavia asserts the sole reason it did not meet the "SBA eligibility criteria" was its status as a Chapter 11 bankruptcy debtor.  *Id.* ¶ 23.  On May 27, 2020, Vestavia initiated an adversary proceeding against Appellants SBA and the SBA Administrator (hereafter collectively referred to as "the SBA").  *See* Adv. No. 20-90073-LA.  In its adversary complaint, Vestavia alleged that the SBA violated the Administrative Procedures Act ("APA") and the non-discrimination provision of 11

4

U.S.C. § 525(a) by prohibiting current bankruptcy debtors from being considered for PPP loans.  Adv. Complaint ¶¶ 33–45.

On May 29, 2020, Vestavia filed an emergency application for a temporary restraining order and injunctive relief with the bankruptcy court, seeking to require the SBA to consider Vestavia's PPP loan application.  Adv. No. 20-90073-LA, ECF No. 5.  The parties eventually stipulated to have the emergency application treated as a motion for a preliminary injunction.  Adv. No. 20-90073-LA, ECF No. 17.  On June 26, 2020, after a hearing and over the opposition of the SBA, the bankruptcy court granted Vestavia's motion and entered a preliminary injunction barring the SBA from disqualifying or denying Vestavia's PPP application on the basis of Vestavia's status as a bankruptcy debtor or refusing to guaranty a PPP loan sought by Vestavia on that basis.  Adv. No. 20-90073-LA, ECF No. 26.  The bankruptcy court subsequently issued a Memorandum of Decision.  Adv. No. 20-90073-LA, ECF No. 27.  On July 10, 2020, the SBA appealed.  ECF No. 1.  On July 29, 2020, the SBA filed a motion for mandatory withdrawal of the reference, which was transmitted to the district court on September 16, 2020.  Case No. 20-cv-1824-GPC-LL, ECF No. 1; Adv. No. 20-90073-LA, ECF No. 45.

**Appeal of Bankruptcy Court's Preliminary Injunction Order**

The Court will first consider the bankruptcy court's order granting Vestavia's motion for a preliminary injunction before turning to the SBA's motion to withdraw the reference to the bankruptcy court.

**I.    Legal Standard**

The Court has jurisdiction to review a bankruptcy court's final orders pursuant to 28 U.S.C. § 158(a).  "[W]here the bankruptcy court issues a 'preliminary' injunction, but contemplates no further hearings on the merits of the injunction . . . the injunction is a final, appealable order."  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1092–93 (9th Cir. 2007) (quoting *In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 778 (S.D.N.Y. 1992)).  The

Court also has discretion to hear appeals of interlocutory orders with leave of court.[1]  28 U.S.C. § 158(a)(3).

On appeal, the district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  *Havelock v. Taxel*, 67 F.3d 187, 191 (9th Cir. 1995); Fed. R. Bankr. Proc. 8013.  Although the Court reviews de novo the legal findings underlying an order granting a preliminary injunction, the decision to grant the preliminary injunction is reviewed for an abuse of discretion.  *In re Focus Media Inc.*, 387 F.3d 1077, 1081 (9th Cir. 2004).

"[A] plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest."  *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018) (quoting *Winter v. Natural Resources Defense Council*, Inc., 555 U.S. 7, 20 (2008)).

## II.   Discussion

In this appeal, the SBA challenges the bankruptcy court's authority to issue a preliminary injunction and the bankruptcy court's finding that Vestavia was likely to succeed on the merits of its APA claims.  Vestavia claims that the appeal is moot and that the bankruptcy court did not err in entering the preliminary injunction on the basis that the SBA violated the APA, and that in the alternative the Court should affirm the preliminary injunction on the basis that the SBA violated the non-discrimination provision in 15 U.S.C. § 525(a).

\ \ \

\ \ \

---

[1] Because the Court would exercise its discretion to permit appeal of the preliminary injunction, the Court therefore need not decide whether the preliminary injunction is a final order pursuant to 28 U.S.C. § 158(a).

**A. Mootness**

As a preliminary matter, Vestavia argues that the appeal is moot because the SBA has disbursed the PPP funds in line with program requirements, and thus the Court cannot grant effective relief.  The SBA contends that the appeal is not mooted by its compliance with the preliminary injunction order because resolution of the appeal would affect whether Vestavia may qualify for forgiveness of the PPP loan.

Article III of the U.S. Constitution limits the jurisdiction of federal courts to actual cases and controversies.  U.S. Const., Art. III § 2, cl. 1.  Federal courts cannot exercise jurisdiction over a case if it is moot, but "[t]he burden of demonstrating mootness is a heavy one." *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) (quoting *Northwest Envt'l Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988)).  An appeal is moot and must be dismissed when "the appellate court can no longer grant 'any effectual relief whatever to the prevailing party,'" rendering "any resulting opinion . . . merely advisory." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)); *see also In re Dynamic Brokers, Inc.*, 293 B.R. 489, 493–94 (B.A.P. 9th Cir. 2003) (citation omitted) ("An appeal is moot if events have occurred after the entry of the order being appealed that prevent an appellate court from granting effective relief.").

Vestavia has not demonstrated that the Court "can no longer grant 'any effectual relief whatever'" to the SBA. *Shell Offshore*, 815 F.3d at 628 (citation omitted).  Even if Vestavia no longer has the PPP funds because they have already been used for eligible purposes, such as operations and payroll expenses, that does not mean the Court cannot grant effective relief. *See In re Gould*, 401 B.R. 415, 422 (B.A.P. 9th Cir. 2009), *aff'd*, 603 F.3d 1100 (9th Cir. 2010) ("Simply because Debtor may have a present inability to repay the government does not mean effective relief is unavailable.").  Regardless of whether Vestavia has the ability to return the funds, a case is only constitutionally moot if no meaningful relief could be granted. *Cf. Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (noting that "[w]hile a court may not be able to return the

parties to the *status quo ante*" following appellee's compliance with district court's order that could not be fully undone, it could "fashion *some* form of meaningful relief" and therefore appeal was not moot). A decision reversing the bankruptcy court would affect the Parties' rights going forward, as the SBA is still enjoined from refusing to guaranty Vestavia's PPP loan or from disqualifying Vestavia from participating in the PPP, *see* Adv. No. 20-90073-LA, ECF No. 26, such that under the preliminary injunction, the SBA is likely required to forgive the loan if Vestavia otherwise qualifies for forgiveness. Accordingly, the Court finds that the appeal is not constitutionally moot.

In the bankruptcy context, an appeal may also be equitably moot even if a case or controversy continues to exist for the purposes of Article III. An appeal of a bankruptcy court order may be equitably moot if there has been a "comprehensive change of circumstances . . . so as to render it inequitable for [the] court to consider the merits of the appeal." *In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012) (quoting *In re Roberts Farms*, 652 F.2d 793, 798 (9th Cir. 1981). However, in the Ninth Circuit, the equitable mootness doctrine has mostly been deployed in situations involving a consummated plan of reorganization or similarly complex transactions ordered by or approved of in an order of the bankruptcy court. *See, e.g.*, *In re Mortgages Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014); *Focus Media*, 378 F.3d at 923−24 (applying equitable mootness analysis to appeal seeking termination of bankruptcy proceedings and disgorgement of attorneys' fees paid to creditors' attorneys); *In re Kong*, No. BAP CC-15-1371-KITAL, 2016 WL 3267588, at *6–7(B.A.P. 9th Cir. June 6, 2016) (finding *Thorpe* standard applicable to appeal of order approving compromise and sale order); *In re Isom*, No. 4:15-BK-40763, 2020 WL 1950905, at *5−6 (B.A.P. 9th Cir. Apr. 22, 2020) (applying *Thorpe* to determine whether substantial consummation of a settlement rendered appeal moot).

Vestavia provides no authority supporting extension of the equitable mootness doctrine to the present case. The reorganization process may be underway, but no consummated reorganization plan is implicated here. Although third parties received the

PPP funds at issue and the SBA did not seek a stay, Vestavia has not explained how "the case presents transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." *Thorpe*, 677 F.3d at 880.

Even if equitable mootness did apply, the Court would find that Vestavia has not borne its "heavy burden" in demonstrating the appeal is equitably moot. *Id.* (quoting *Jacobus v. Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003)). In deciding whether to apply the doctrine, courts must consider whether a stay was sought; "whether substantial consummation of the plan has occurred," "the effect a remedy may have on third parties not before the court," and "whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." *Id.* at 880–81. The parties do not dispute that the SBA did not seek a stay of the bankruptcy court's order. The Bankruptcy Appellate Panel of the Ninth Circuit has "recognized the 'tension' in Ninth Circuit authority concerning the issue of an appellant's failure to seek a stay and whether that failure conclusively moots an appeal." *In re Kong*, 2016 WL 3267588, at *6. Other decisions have indicated that in addition to the failure to seek a stay, "there must also be some subsequent event that would render consideration of the issues on appeal inequitable, and thereby trigger an equitable mootness analysis." *In re Zuercher Tr. of 1999*, No. BAP NC-13-1299, 2014 WL 7191348, at *7 (B.A.P. 9th Cir. Dec. 17, 2014); *see also In re Eliminator Custom Boats, Inc.*, No. BAP CC-19-1003-KUFL, 2019 WL 4733525, at *4 (B.A.P. 9th Cir. Sept. 23, 2019) ("[F]ailure to seek or obtain a stay does not automatically result in equitable mootness.").

The Court agrees that, at least in this case, the SBA's failure to seek a stay alone cannot render the appeal equitably moot. The preliminary injunction in this case was not part of a reorganization plan, and it would be possible to fashion relief without throwing Vestavia's reorganization into turmoil. If Vestavia were required to repay the PPP loan, it is likely that the SBA would merely become another creditor in Vestavia's bankruptcy case. And although the Court recognizes that third parties would be affected by a

reversal of the bankruptcy court's decision in this case, many of these effects—such as reduced wages for employees, layoffs, or lower capacity for nursing home residents—would not stem so much from the unwinding of complex transactions, but from the mere fact of an adverse ruling; in other words, these externalities would exist even if the bankruptcy court had denied the preliminary injunction outright. Such contemplated negative effects on third parties are therefore not clearly related to their reliance on the preliminary injunction order. *Cf. Thorpe*, 677 F.3d at 880 (noting that equitable mootness derives from the public policy that "third parties are entitled to rely on a final bankruptcy court order"). Thus, because this is not a circumstance in which resolving the appeal would require an impractical unwinding of complex transactions, the Court does not find that the appeal is equitably moot.[2]  *See In re Transwest Resort Properties, Inc.*, 801 F.3d 1161, 1171 (9th Cir. 2015) (noting that "whether the bankruptcy court could fashion equitable relief without completely undoing the plan" is "the most important[] consideration in the equitable mootness test").

Accordingly, the Court finds the appeal is not moot.[3]

## B. Sovereign Immunity

The SBA contends that the bankruptcy court lacked jurisdiction to enter a preliminary injunction against it because the Administrator and the agency is entitled to sovereign immunity under Section 634(b)(1) of the Small Business Act. Vestavia urges the Court that a proper interpretation of Section 634(b)(1) does not prohibit all injunctive relief against the agency.

"The United States, as sovereign, is immune from suit in state or federal court except to the extent that Congress has expressly waived such sovereign immunity." *Tritz*

---

[2] Additionally, Vestavia's reliance on *In re Adams Apple*, 829 F.2d 1484 (9th Cir. 1987) is misplaced. The Ninth Circuit in *Adams Apple* only considered statutory mootness under 11 U.S.C. § 364(e), which is not applicable here.

[3] For the same reasons, the Court finds the motion for withdrawal of the reference is likewise not mooted by the SBA's compliance with the preliminary injunction.

*v. U.S. Postal Serv.*, 721 F.3d 1133, 1136 (9th Cir. 2013) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).  Section 702 of the APA waives sovereign immunity for certain claims, but not "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702.  According to the SBA, Section 634(b)(1) of the Small Business Act expressly provides that the waiver of the SBA's sovereign immunity does not extend to injunctions.  That section states:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property.

15 U.S.C. § 634(b)(1).

Several Courts of Appeals have held that Section 634(b)(1) operates as an absolute bar on courts' jurisdiction to enter any injunctive relief against the SBA, relying on the plain language of the provision.  *See Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975); *Valley Const. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir. 1983); *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990); *In re Hidalgo Cty. Emergency Serv. Found.*, 962 F.3d 838, 840 (5th Cir. 2020) (citation omitted) ("[T]his [c]ircuit has concluded that all injunctive relief directed at the SBA is absolutely prohibited.").  Other courts have interpreted Section 634(b)(1) to forbid injunctions in some, but not all, circumstances.  In the leading case taking this position, *Ulstein Marine, Ltd. v. United States*, the First Circuit reasoned that legislative history required a more limited reading of the anti-injunction language.  *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1056–57 (1st Cir. 1987).  The First Circuit noted that this "boilerplate" anti-injunction language started appearing in statutes establishing agencies after the Supreme Court's decision in *Federal Housing Administration v. Burr*, which held that a general sue-and-be-sued clause rendered agencies that participated in commerce subject to suit for garnishment and attachment of the agency's assets.  *Id.* at 1056 (citing *Fed. Housing Admin. v. Burr*, 309

U.S. 242 (1940).  Although the legislative history of the Small Business Act itself did not shed light on the purpose of this limitation on sovereign immunity, the First Circuit found that "the legislative history of earlier statutes containing the identical wording indicates that it was intended to keep creditors or others suing the government from hindering and obstructing agency operations through mechanisms such as attachment of funds." *Id.* at 1056–57.  Agreeing with a previous decision from the Federal Circuit, the court in *Ulstein* noted that the legislative history of the Small Business Act did not indicate Congress intended the SBA to have greater immunity than other agencies, suggesting that the language in Section 634(b)(1) should not be read broadly.  *Id.* at 1057 (quoting *Cavalier Clothes v. United States*, 810 F.2d 1108, 1112 (Fed. Cir. 1987)).

Several district courts have followed *Ulstein* in fielding challenges to the SBA's implementation of the PPP.  *E.g.*, *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1052 (E.D. Wis. 2020), *appeal dismissed*, No. 20-1729, 2020 WL 6481792 (7th Cir. Aug. 5, 2020); *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 459 F. Supp. 3d 943, 954–55 (E.D. Mich. 2020); *Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 471 (D. Md. 2020); *Alaska Urological Inst., P.C. v. U.S. Small Bus. Admin.*, 619 B.R. 689, 698–701 (D. Alaska 2020).  Some of these cases supply reasons beyond the legislative history for reading Section 634(b)(1)'s anti-injunction language narrowly.  Courts have referenced the "absurd result" that would arise were they unable to enjoin the SBA from engaging in unconstitutional conduct. *Defy Ventures*, 469 F. Supp. 3d at 471; *see also Camelot*, 458 F. Supp. 3d at 1052 (noting that if Section 634(b)(1) were an absolute bar on injunctive relief, courts could not enjoin even "blatantly unconstitutional" policies).  In *Alaska Urological*, the district court reasoned that the sue-and-be-sued provision's introductory clause limits the provision to acts "[i]n the performance of, and with respect to, the functions, powers, and duties vested in [the Administrator] by this chapter," meaning that injunctions challenging actions beyond the SBA's authority are exempt from the prohibition.  *Alaska Urological*,

619 B.R. at 699 (citing *Dubrow v. Small Bus. Admin.*, 345 F. Supp. 4, 7 n.5 (C.D. Cal. 1972)).

The Ninth Circuit has not squarely addressed the proper interpretation of the "no . . . injunction" language in Section 634 or identically worded statutes. *But see Am. Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d 1250, 1255 (9th Cir. 1999) (finding identical "anti-injunction" provision in Higher Education Act, 20 U.S.C. § 1082(a)(2), precluded "coercive" declaratory judgment against Secretary of Education that would short-circuit administrative appeals process, but noting that Ninth Circuit had entered permanent injunction against agency in different context); *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) (citing *id.*) ("We have previously concluded that certain suits for declaratory relief against the Secretary are barred by the anti-injunction clause. . . [and] cannot rely on § 1082 to provide jurisdiction" over mandamus petition); *see also Valentino v. U.S. Dep't of Educ.*, No. 09CV0006 JM(LSP), 2009 WL 2985686, at *4 (S.D. Cal. Sept. 16, 2009) (noting Higher Education Act's sue-and-be-sued clause's sovereign immunity "waiver expressly does not extend to injunctive relief, as § 1082(a)(2) prohibits injunctions against the Secretary except where he exercises powers that are clearly outside his statutory authority").

Without any binding authority on the issue, the Court therefore turns to general principles of statutory interpretation. The SBA contends that Ninth Circuit and Supreme Court decisions prevent the Court from looking beyond the statutory text to broadly construe a waiver of sovereign immunity. Vestavia argues that the bankruptcy court correctly followed *Ulstein* in considering the legislative history and purpose of the statute to determine the meaning of the "no . . . injunction" language.

The Court must "apply traditional tools of statutory construction to determine whether the scope of Congress' waiver is 'clearly discernable from the statutory text.'" *Ordonez v. United States*, 680 F.3d 1135, 1138 (9th Cir. 2012) (quoting *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012)). If so, then the Court must "abide by Congress' instruction;" otherwise, the Court must "construe any ambiguities in the scope of a waiver in favor of

the sovereign." *Id.* On its face, Section 634(b)(1) says "no . . . injunction . . . shall be issued against the administrator." 15 U.S.C. § 634(b)(1). However, "[s]tatutory language 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). One canon of statutory interpretation, *noscitur a sociis*, provides that "a string of statutory terms raises the implication that the words grouped in a list should be given related meaning." *S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 378 (2006) (citation omitted). Similarly, as noted by the district court in *Tradeways, Ltd. v. U.S. Department of the Treasury*, another fundamental doctrine of statutory construction known as *ejusdem generis* provides that a general term in a list of more specific terms should be understood to "embrace only objects similar in nature to those objects enumerated by the specific terms." *Tradeways, Ltd. v. United States Dep't of the Treasury*, No. CV ELH-20-1324, 2020 WL 3447767, at *10 (D. Md. June 24, 2020) (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018)). Here, "injunction" is a broad term included in a list of more specific forms of relief that are prohibited, alongside "attachment," "garnishment," and "other similar process." 15 U.S.C. § 634(b)(1). It is plausible, therefore, that the term "injunction" in Section 634(b)(1) should be construed narrowly, in line with the remedies of attachment and garnishment, to refer only to injunctions "interfering with the SBA's commercial operations or property." Id. at 11. *Tradeways*, 2020 WL 3447767 at *11.

However, implementation of these canons of construction likely renders the language of the sovereign immunity waiver, at best, ambiguous. It is also not clear that the Court can look to the legislative history of the provision, as the First Circuit did in *Ulstein*. *See Ulstein*, 833 F.2d at 1056–57. The Court can only consider the legislative history of a statute when the text is ambiguous, but any ambiguities in the text of a sovereign immunity waiver must be construed in favor of the sovereign. *In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016); *Ordonez*, 680 F.3d at 1138; *see also Lane*

*v. Pena*, 518 U.S. 187, 192 (1996) ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text.").  Additionally, although several other district courts have found it would be absurd to read the SBA's waiver of sovereign immunity to completely prohibit injunctive relief even in cases of a constitutional dimension, *e.g.*, *Defy Ventures*, 469 F. Supp. 3d at 471; *Alaska Urological*, 619 B.R. at 699, the doctrine of sovereign immunity at times imposes what many would regard as unjust results by shielding the United States from suit.  *E.g.*, *Donahue v. United States*, 660 F.3d 523, 526 (1st Cir. 2011) (en banc) (Torruella, J., concerning the denial of en banc review) (describing sovereign immunity as "an anachronistic judicially invented legal theory that has no validity or place in American law").  Nevertheless, the Supreme Court has embraced a broad conception of sovereign immunity by which this Court is bound.  *See Lane*, 518 U.S. at 192 (1996).

Therefore, the Court finds it likely that Section 634(b)(1) does not unambiguously waive the SBA's sovereign immunity for injunctive relief.  However, because the Court finds that Vestavia has not shown it is likely to succeed on the merits, the Court need not definitively resolve the question of the SBA's immunity.[4]

### C. Likelihood of Success on the Merits of the APA Claims

In its preliminary injunction order, the bankruptcy court held that Vestavia was likely to succeed on the merits of its claims under Sections 706(2)(C) and 706(2)(A) of the APA.  Both types of APA claims "provide for related but distinct standards for reviewing rules promulgated by administrative agencies," and the Court accordingly considers them in turn.  *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926

---

[4] Although the parties also dispute whether the adversary was a "core" or "non-core" proceeding and thus whether the bankruptcy court had jurisdiction to enter the preliminary injunction order, the Court finds it unnecessary to reach this issue because it finds Vestavia was not entitled to a preliminary injunction based on the merits of its APA and 15 U.S.C. § 525(a) claims.  Likewise, because the parties only briefly address the question of whether 11 U.S.C. § 106(a) abrogates sovereign immunity with respect to Vestavia's claims under 15 U.S.C. § 525(a), the Court does not reach this issue.

F.3d 1061, 1075 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 131 (2020) (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 521 (2d Cir. 2017)).

### 1. Exceeding statutory authority granted by the CARES Act

The APA provides that a court may invalidate agency action if it exceeds the statutory authority under which it was promulgated.  5 U.S.C. § 706(2)(C).  To determine whether the challenged agency action is consistent with Congress's directive, courts employ the familiar *Chevron* framework.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984); *Montana Consumer Counsel v. F.E.R.C.*, 659 F.3d 910, 915 (9th Cir. 2011).  "First, if Congress has directly spoken to the precise question at issue, then the matter is capable of but one interpretation by which the court and the agency must abide."  *Bahr v. U.S. Envtl. Prot. Agency*, 836 F.3d 1218, 1230 (9th Cir. 2016) (citations omitted).  Second, if "Congress was silent on the issue, or the statute is subject to multiple interpretations," a court must defer to the agency's reasonable interpretation if "the agency can demonstrate that it has the general power to make rules carrying the force of law and that the challenged action was taken in the exercise of that authority."  *Id.* (quoting *Sierra Club v. EPA*, 671 F.3d 955, 962 (9th Cir. 2012)).

There is no question that Congress delegated authority to the SBA to make rules in implementing the CARES Act.  *See* 15 U.S.C. § 9012 (directing the administrator to "issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under [the APA]").  However, the Parties dispute whether the statute was unambiguous with respect to whether debtors in bankruptcy proceedings are eligible for the PPP, and whether the SBA had the authority to promulgate rules excluding them.  Vestavia argues that the CARES Act unambiguously did not exclude debtors in bankruptcy, and that the court cannot imply a delegation of authority on an issue of such "deep economic and political significance."  *King v. Burwell*, 135 S. Ct. 2480, 2485 (2015).  The SBA counters that Congress did not address whether debtors in bankruptcy are eligible for PPP loans, and that its eligibility rules were consistent with a permissible construction of the CARES Act and the existing

framework established by Section 7(a) of the Small Business Act.  The bankruptcy court agreed with Vestavia and stopped at step one of the *Chevron* framework, finding that the language of the CARES Act unambiguously did not exclude debtors in bankruptcy proceedings from receiving PPP loans, and thus that the SBA exceeded its authority in promulgating the First and Fourth IFR and application form that excluded entities in bankruptcy like Vestavia.  Adv. No. 20-90073-LA, ECF No. 27 at 13.

*i. Text of the CARES Act*

There is no provision in the CARES Act that explicitly provides that debtors in bankruptcy are eligible for the PPP, or that explicitly bars the SBA from imposing eligibility requirements.  Instead, Vestavia points to several provisions in the statute that it argues clearly evince Congress's intent to preclude the SBA from excluding bankruptcy debtors.  First, Vestavia highlights Section 636(a)(36)(D)(i), which provides:

> During the covered period, in addition to small business concerns, any business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a covered loan if the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern employs not more than the greater of--
> > (I) 500 employees; or
> > (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

15 U.S.C. § 636(a)(36)(D)(i).  Vestavia argues that Congress's statement that "any business concern . . . shall be eligible to receive a covered loan" if it meets the stated size requirements means that the SBA was not delegated the authority to impose eligibility requirements of its own.  The Court recognizes that "any" typically is accorded an "expansive meaning," equivalent to the terms "all" or "every."  *See United States v. Gonzales*, 520 U.S. 1, 5 (1997); *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).  However, in "making the threshold determination under *Chevron*, 'a reviewing court should not confine itself to examining a particular statutory provision in isolation,'" but

instead should read the text in the context of the overall statutory scheme.  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (quoting *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)); *Defy Ventures*, 469 F. Supp. 3d at 472 (quoting *Small v. United States*, 544 U.S. 385, 388 (2005)) ("[I]t is an error to place dispositive weight on 'any' 'without considering the rest of the statute.'").  First, the text of the provision itself casts some doubt on Vestavia's urged interpretation.  The provision states that "*in addition to small business concerns*, any business concern" meeting the size requirement is eligible.  15 U.S.C. § 636(a)(36)(D)(i).  Contrasting "any business concern" with "small business concerns" suggests that the provision intended to expand eligibility beyond those that qualify as small business concerns within the SBA's size standards, which vary by industry. 13 C.F.R. § 121.101.  However, the Court does not read the provision as unambiguously depriving the SBA of authority to impose any eligibility requirements aside from the type of entity and size.  *See Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria.").

If Congress's inclusion of the language "any business concern" nullified all preexisting requirements and eliminated the SBA's ability to set other eligibility rules, a number of more specific provisions in the CARES Act would be redundant.  As the SBA argues, the immediately following provision of the statute, which grants eligibility to "sole proprietors" would be superfluous if the only contemplated eligibility requirement for business concerns was the size requirement, as individual proprietors are already included in the definition of "business concern." 15 U.S.C. § 636(a)(36)(D)(i); 13 C.F.R. § 121.105.  Further, other parts of the statute explicitly waive certain preexisting rules and statutory requirements in Section 636(a), which would be unnecessary if the "any business concern" language was intended to be read as broadly as urged by Vestavia.  *E.g.*, 15 U.S.C. §§ 636(a)(36)(D)(iii) (waiving affiliation rules); 636(a)(36)(I) (waiving requirement that business is unable to obtain credit elsewhere); 636(a)(36)(J) (waiving

requirement of personal guarantee and collateral).  "In general, a statute should 'be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1159 (9th Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).  As other courts have noted, the other provisions eliminating standard eligibility requirements would be meaningless if Section 636(a)(36)(D)(i) eliminated all requirements aside from entity type and size.  *See Pharaohs GC, Inc. v. United States Small Bus. Admin.*, --- F.3d. -----, No. 20-2170-CV, 2021 WL 821457, at *4 (2d Cir. Mar. 4, 2021) ("Reading subparagraph D in the context of the SBA's 7(a) loan program, it is clear that Pharaohs's interpretation—i.e., "any business concern" means "every business concern"—is not tenable"); *Diocese of Rochester*, 466 F. Supp. 3d at 376; *Defy Ventures*, 469 F. Supp. 3d at 473; *Tradeways*, 2020 WL 3447767, at *13.

Vestavia also argues that the explicit exclusion of bankruptcy debtors elsewhere in the CARES Act indicates that the absence of any reference to bankruptcy debtors in provisions related to the PPP reflects an intention not to exclude them from participation in the PPP.  Section 4003(c)(3)(D)(i) of the CARES Act, which relates to a loan program for mid-sized businesses, provides that "[a]ny eligible borrower applying for a direct loan under this program shall make a good-faith certification that," among other things, "the recipient is not a debtor in a bankruptcy proceeding."  15 U.S.C. § 9042(c)(3)(D)(i).  Indeed, a principle of statutory construction known as the *Russello* presumption provides "that where 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" *United States v. Reed*, 734 F.3d 881, 889 (9th Cir. 2013) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  The SBA argues this interpretive principle does not control here.  According to the SBA, the inclusion of a specific requirement that the applicant certify they are not in bankruptcy in the section establishing the mid-sized business loan program, and not in the section establishing the PPP, is unsurprising because Congress placed the PPP within

the existing statutory scheme for the SBA's loan programs, which already included a "sound value" requirement pursuant to which the SBA has established loan criteria.  In contrast, the SBA argues, the mid-sized business loan program set out in Section 4003(c)(D) was established as a separate program to be administered by the U.S. Department of the Treasury, for which there were no existing lending requirements.

The Court finds that the *Russello* presumption is not dispositive in this case, as both interpretations of the statute are plausible.  On the one hand, as Vestavia suggests, Congress may have included a bankruptcy certification requirement for the mid-sized business loan program, and not for the PPP, because the former is a "true" loan program that anticipates repayment, whereas the latter anticipates loans used for specified purposes will be forgiven.  15 U.S.C. § 9005(b); 15 U.S.C. § 9042(c)(3)(i).  On the other hand, Congress did recognize that it was situating the PPP within an existing statutory scheme for loan issuance by the SBA, at points explicitly providing that other subsections of Section 636 did not apply.  *E.g.*, 15 U.S.C. § 636(a)(36)(I) ("[T]he requirement that a small business concern is unable to obtain credit elsewhere, as defined in section 632(h) of this title, shall not apply to a covered loan.").  Congress therefore may have declined to impose additional requirements, like a bankruptcy certification, because the statute already contemplates that the SBA will impose its existing loan requirements to the extent not modified by the CARES Act, whereas the mid-sized loan program was written on a relative blank slate.  *Cf. Burns v. United States*, 501 U.S. 129, 136 (1991), *abrogated on other grounds by United States v. Booker*, 543 U.S. 220, 125 (2005)) ("In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective.").  Accordingly, the Court does not find that the exclusion of bankruptcy debtors elsewhere in the statute renders the silence in Section 636(a)(36) an unambiguous command that bankruptcy debtors be included.

Lastly, Vestavia urges that Congress's silence with respect to the exclusion of bankruptcy debtors, taken alongside the CARES Act's overarching purpose to help

struggling businesses during the pandemic, indicates that Congress did not intend for the SBA to promulgate regulations barring bankruptcy debtors from participating in PPP. Vestavia relies on *King v. Burwell* for the proposition that if Congress wishes to delegate questions "of deep economic and political significance" to an agency, it does so expressly. *King*, 576 U.S. at 485. The SBA contends that Congress's silence means the opposite: that Congress had no intent to implicitly abrogate the longstanding requirement that "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment," 15 U.S.C. § 636(a)(6), pursuant to which the SBA sets eligibility requirements. The question comes down to how to interpret Congressional silence.

While the Court recognizes that the broad purpose of the CARES Act and the PPP was to quickly deliver funds to businesses struggling as a result of the pandemic so that they could continue to operate and pay their employees, it does not follow that Congress intended to implicitly nullify other parts of Section 636(a) and thus deprive the SBA of the authority to set certain eligibility requirements as it does for other loans under Section 7(a). The PPP loan may be intended to be mostly forgiven, but forgiveness is not automatic. *See* 15 U.S.C. § 9005(b). Thus, some borrowers will have to repay the funds, just as they would for other loans guaranteed by the SBA. As noted above, the statutory text does not reveal an intent to do away with all eligibility requirements, as evidenced by Congress's choice to explicitly eliminate specific ones. Congress recognized that the sound value requirement existed, but it appears to have chosen not to prevent its application to the PPP. *Cf. Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1095 (9th Cir. 2020) (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)) ("Congress presumptively 'legislates against the backdrop of existing law.'"); *see also Pharaohs GC*, 2021 WL 821457 at *4; *Diocese of Rochester*, 466 F. Supp. 3d at 376. Silence in this case does not unambiguously signify an intent to preclude the SBA from adopting requirements related to loan collectability.

The Supreme Court's decision in *King* does not compel a contrary conclusion. The Court found that *King* presented an "extraordinary case" justifying departure from the typical *Chevron* framework.  *King*, 576 U.S. at 485.  There, Congress was silent as to whether the Affordable Care Act ("ACA") authorized tax credits for individuals who enrolled in healthcare coverage through a federal healthcare exchange.  *Id.*  In refusing to read an implicit delegation of authority to the Internal Revenue Service ("IRS") to fill the ACA's statutory gaps, the Court found it would be inconceivable that Congress had intended to leave such a question so central to the functioning of the system established by the ACA to an agency, especially the IRS, which had "no expertise in crafting health insurance policy of this sort."  *Id.* at 485–86.  Unlike *King*, Congress here legislated on an existing backdrop that granted the SBA authority to impose loan eligibility requirements pursuant to the "sound value" requirement.  Under that statutory scheme, the SBA has required lenders to consider creditworthiness, including by inquiring about the applicant's bankruptcy history.  *See* SBA Form 1919: SBA 7(a) Borrower Information Form, ECF No. 7-4 at 132 ("Form 1919"); 13 C.F.R. § 120.10 (making "forms applicable to the 7(a) Loan Program" "Loan Program Requirements).  It is not unreasonable to conclude that Congress meant to delegate similar rulemaking authority to the SBA as it had in the past.  This is far different than presuming that through its silence, Congress intended the IRS to make major substantive decisions about the meaning of key provisions of a new healthcare policy.[5]

Although not specifically raised by Vestavia, the Court likewise finds the other statutory provisions mentioned in the Florida bankruptcy court's decision in *Gateway Radiology* ("*Gateway I*"), upon which the bankruptcy court relied, unilluminating as to whether or not the statute permits the SBA to impose additional eligibility requirements.

---

[5] Although the question of whether debtors in bankruptcy are eligible for PPP loans has "economic and political significance" in a general sense, *King*, 576 U.S. at 485, the Court declines to read *King* as an invitation to disregard the *Chevron* framework any time an agency decision has a significant social or fiscal impact.

Adv. No. 20-90073-LA, ECF No. 27 at 12 (citing *In re Gateway Radiology Consultants, P.A.*, 616 B.R. 833 (Bankr. M.D. Fla. 2020)*, vacated in part, appeal dismissed in part*, 983 F.3d 1239 (11th Cir. 2020) ("*Gateway II*")).  Section 636(a)(36)(G), which provides that an "eligible recipient" shall make certain certifications, does not clarify whether the SBA is permitted to impose requirements that determine whether an applicant is an "eligible recipient" in the first place.  15 U.S.C. § 636(a)(36)(G); *Gateway II*, 983 F.3d at 1259.  *Gateway I*'s interpretation of Section 636(a)(36)(F)(ii)(II), which states that a lender must consider, "in evaluating the eligibility of a borrower," whether the borrower (1) was in operation on February 15, 2020 and (2) had either employees for which it paid salary and payroll taxes or paid independent contractors, is unpersuasive for much the same reason that the Court disagreed with Vestavia's reading of Section 636(a)(36)(D)(i).  Reading these two "considerations" as the only conditions on PPP eligibility would render many of the other provisions, even the size requirement in Section 636(a)(36)(D)(i) itself, superfluous or contradictory.  *See Gateway II*, 983 F.3d at 1258–59 (citing *Corley*, 556 U.S. at 314).

### i. Subsequent Enactments

Both Vestavia and the SBA argue that developments after the bankruptcy court's entry of a preliminary injunction support their position.  Congress recently enacted the Consolidated Appropriations Act, 2021 ("Appropriations Act"), Pub. L. No. 116-260, 134 Stat. 1182 (2020), which established a third phase of the PPP.  In relevant part, that act amended the Bankruptcy Code to provide:

> The [bankruptcy] court, after notice and a hearing, may authorize a debtor in possession or a trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of this title to obtain a loan under paragraph (36) or (37) of section 7(a) of the Small Business Act (15 U.S.C. 636(a)).

134 Stat. 1182, 2015.  The debtors or trustees referred to in the provision are those in the streamlined bankruptcy process under subchapter V of Chapter 11 (11 U.S.C. §§ 1183, 1184); those in proceedings under Chapter 12, for "family farmers" and "family

fisherman" (11 U.S.C. §§ 1203, 1204); and individuals in proceedings under Chapter 13 (11 U.S.C. § 1304).  The Appropriations Act further provides that the above provision shall:

> take effect on the date on which the [SBA] Administrator submits to the Director of the Executive Office for United States Trustees a written determination that, subject to satisfying any other eligibility requirements, any debtor in possession or trustee that is authorized to operate the business of the debtor under section 1183, 1184, 1203, 1204, or 1304 of title 11, United States Code, would be eligible for a loan under paragraphs (36) and (37) of section 7(a) of the Small Business Act (15 U.S.C. 636(a))[.]

134 Stat. 1182, 2016.  Vestavia contends that the provision's language, included in an act that narrowed eligibility for the third round of PPP loans, demonstrates that Congress never intended to exclude bankruptcy debtors in the previous rounds of the program.  The SBA argues that Congress recognized the SBA previously determined all debtors in bankruptcy to be ineligible for PPP loan guarantees, and in adopting this section in the Appropriations Act, decided to render certain categories of debtors potentially eligible for the PPP subject to the SBA's written determination.  The SBA also notes that in each of the three previous amendments to the PPP,[6] Congress declined to mandate eligibility for debtors in bankruptcy proceedings despite the SBA's rules excluding them.

The SBA presents the more logical interpretation of this provision of the Appropriations Act.  A condition precedent to the provision going into effect is the SBA's written determination that the debtors in bankruptcy or bankruptcy trustees under the specified sections would be eligible to receive a PPP loan.  The provision merely

---

[6] *See* Extending Authority for Commitments for the Paycheck Protection Program & Separating Amounts Authorized, Pub. L. No. 116-147, 134 Stat. 660 (2020); Paycheck Program Flexibility Act of 2020, Pub. L. No. 116-142, 134 Stat. 641 (2020); Paycheck Protection Program & Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620 (2020).  The fact that Congress did not make any effort to 'correct' the agency's bankruptcy exclusion provides support for the SBA's argument.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 45 (1983) ("[A]n agency's interpretation of a statute may be confirmed or ratified by subsequent congressional failure to change that interpretation.").

permits the bankruptcy court to authorize such a debtor or trustee to obtain a loan, should the SBA open up eligibility to them.  As it is not directed at the SBA, it does not require the SBA to expand or narrow PPP eligibility requirements with respect to debtors in bankruptcy; at most, it acknowledges that the SBA is permitted to determine certain categories of debtors in bankruptcy are eligible for the PPP.  Had Congress presumed that all debtors in bankruptcy were already eligible and intended only to limit the availability of PPP loans to a smaller subset of debtors in bankruptcy for the third round of the program, as Vestavia argues, there would have been no need to condition the effective date of the provision on the SBA's determination of their eligibility.  Thus, the Court finds that this provision of the Appropriations Act does not demonstrate that Congress unambiguously intended to deprive the SBA of the authority to exclude debtors in bankruptcy from receiving PPP loans.

> *iii.* Chevron *Step Two*

Having found that Congress did not clearly answer the question of whether debtors in bankruptcy could be excluded from the PPP, the Court turns to step two of the *Chevron* framework: determining "whether the agency's answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.  An agency's interpretation of statutory authority is examined "in light of the statute's text, structure and purpose." *Altera Corp.*, 926 F.3d at 1076 (quoting *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 949 (9th Cir. 2007)).  However, a court must uphold a reasonable interpretation under the second step of *Chevron* "even if that construction is not necessarily the best interpretation or the interpretation [the court] would adopt in the absence of an agency interpretation." *Diaz-Quirazco v. Barr*, 931 F.3d 830, 844 (9th Cir. 2019) (citing *Chevron*, 467 U.S. at 843 & n.11).

For similar reasons as those explained above, the Court finds that the agency's interpretation of Section 636(a)(36)—that it permits the agency to impose eligibility requirements in line with Section 636(a)(6)'s "sound value" requirement—is a permissible construction of the statute.  Although the PPP is an emergency relief measure

for businesses struggling as a result of the COVID-19 pandemic, the CARES Act can be reasonably interpreted to eliminate some, but not all, of the eligibility requirements that typically accompany a loan under Section 7(a).  It was reasonable to interpret Congress's silence with respect to the sound value requirement as permitting the agency to exclude businesses that would be potentially be unable to repay the loan should they not meet the requirements for forgiveness.  Based on that interpretation, the SBA adopted eligibility requirements that, it contends, seek to ensure the collectability of the loan while recognizing Congress's intent to have the funds disbursed quickly.  Further, as the SBA had previously taken applicants' bankruptcy history into account in determining eligibility for a loan under Section 7(a), it was not unreasonable, as a matter of legal interpretation, for the SBA to condition eligibility for PPP loans on not being in bankruptcy.  *Cf.* Gateway II, 983 F.3d at 1262 (quoting *Sullivan v. Everhart*, 494 U.S. 83, 93 (1990)) ("We do not say this is an inevitable interpretation of the statute; but it is assuredly a permissible one."); *Tradeways*, 2020 WL 3447767, at *14.

The Court therefore concludes that the bankruptcy court erred in finding that Vestavia is likely to succeed in showing that the SBA acted outside its authority in promulgating the regulations at issue.

## 2. Arbitrary and capricious under Section 706(2)(A)

The APA requires agencies to engage in "reasoned decisionmaking."  *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015) (citation omitted).  Under Section 706(2)(A) of the APA, the Court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  The arbitrary and capricious standard "is used to evaluate whether a rule is procedurally defective as a result of flaws in the agency's decisionmaking process."  *Altera Corp.*, 926 F.3d at 1075 (quoting *Catskill Mountain*, 846 F.3d at 521).

Although a court may not substitute its own judgment for that of the agency, it should "consider whether the decision was based on a consideration of the relevant

factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 285 (1974)).  An agency decision is arbitrary and capricious when the agency (1) "relied on factors which Congress has not intended it to consider;" (2) "entirely failed to consider an important aspect of the problem;" (3) "offered an explanation for its decision that runs counter to the evidence before the agency;" or (4) offered an explanation "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*  The Court cannot supply its own basis for the decision in the absence of a reasoned one provided by the agency, but the agency's decision and explanation need not be a picture of clarity to survive scrutiny under the arbitrary and capricious standard.  *Id.*

Vestavia argues that the First and Fourth IFR excluding debtors in bankruptcy proceedings from participating in the PPP are arbitrary and capricious because the rules were hastily made, do not actually further the SBA's purported goal because businesses can apply for bankruptcy immediately after receiving a PPP loan, and failed to take into account the protections of the bankruptcy process.  In response, the SBA argues that its rules properly balanced the need to ensure expeditious processing of loans with the sound value requirement, resulting in a process that streamlined its typical Section 7(a) loan program requirements but still allowed the agency to ensure collectability and the authorized use of funds.  The bankruptcy court ultimately found that the SBA's decision to exclude debtors in bankruptcy proceedings was arbitrary and capricious because the SBA considered a factor that Congress did not intend it to consider—the collectability of the loan—and failed to consider a factor it should have considered—the protections of the Chapter 11 bankruptcy process.  Adv. No. 20-90073-LA, ECF No. 27.  The court also noted that the SBA's argument that its exclusion of bankruptcy debtors was premised on 15 U.S.C. § 636(a)(6)'s sound value requirement appeared to be a post hoc justification, as the SBA's First IFR eliminated typical underwriting requirements under Section 7(a).  *Id.* at 14–16.

*i. Timing of Agency Explanations*

As a preliminary matter, the Court must address whether it can consider (1) the explanation in the Fourth IFR in considering the agency's decisionmaking process for the First IFR and application form containing the bankruptcy certification; and (2) the Declaration of John A. Miller, an SBA official, that the SBA presented with its administrative record, ECF No. 7-4 at 126 ("Miller Decl."). The First IFR and application form were released on April 3, 2020, less than a week after the CARES Act was signed into law, and effective April 16, 2020, while the Fourth IFR was released on April 24, 2020 and became effective on April 28, 2020. *See* 85 Fed. Reg. 20811; 85 Fed. Reg. 23450. The Miller Declaration was not before the bankruptcy court when it ruled on Vestavia's motion for a preliminary injunction. ECF No. 9 at 36 n.9. Vestavia argues that the Fourth IFR and the Miller Declaration provide post hoc justifications for the SBA's decision to exclude debtors in bankruptcy proceedings and are not properly considered.

"An agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1909 (2020). Thus, in "reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019). Courts may not consider post hoc rationalizations for agency action, whether articulated after-the-fact in court proceedings or in belated agency explanations. *See Regents*, 140 S. Ct. at 1909. However, an agency may "provide an 'amplified articulation' of a prior 'conclusory' observation" as long as its explanation is limited to the original reasons offered. *See id.* at 1908 (citing *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006)).

The Court finds that the gap in time between the First IFR accompanying Form 2483 and the Fourth IFR's specific explanation of the bankruptcy exclusion to be relatively immaterial. Although the administrative record is admittedly sparse, the Fourth IFR's explanation—that "debtors in bankruptcy would present an unacceptably high risk

of an unauthorized use of funds or non-repayment of unforgiven loans" and continued recognition of the need to provide relief expeditiously—is consistent with the more general explanation of the process in the First IFR, even if the First IFR does not explicitly mention the bankruptcy exclusion.  85 Fed. Reg. 20811.  Given that the First IFR explained how it viewed the CARES Act as "streamlining of the regular 7(a) loan requirements" and the preexisting Section 7(a) loan application form included questions related to bankruptcy, *see* Form 1919, the Court does not conclude that the explanation for the bankruptcy exclusion detailed in the Fourth IFR, released a few weeks later, was a post-hoc rationalization.[7]  *Cf. In re Penobscot Valley Hosp.*, No. 19-10034, 2021 WL 150412, at *7 (Bankr. D. Me. Jan. 12, 2021) ("In the extraordinary circumstances surrounding the passage of the CARES Act, and the congressional directive that the Administrator get the PPP off the ground immediately to provide economic relief to struggling businesses and their employees, the lack of a perfectly contemporaneous explanation is far from troubling.").  The information in the Fourth IFR is therefore properly regarded as an "amplified articulation" of the First IFR's reasoning, however sparse or conclusory, *Alpharma*, 460 F.3d at 6, and the Court can consider the Fourth IFR's explanation in determining whether the decision to exclude debtors in bankruptcy proceedings was arbitrary and capricious.

"Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the

---

[7] Other courts have taken issue with the fact that the First IFR does not explicitly reference the bankruptcy exclusion. *See, e.g.*, *Alaska Urological*, 619 B.R. at 706.  The Court agrees that the SBA's lack of clarity at the start was far from ideal and notes that much of the litigation spawned by the bankruptcy exclusion could have been avoided had the SBA provided a detailed accounting of its reasoning up front.  *Cf. San Luis & Delta-Mendota Water Auth. v. United States*, 672 F.3d 676, 714 (9th Cir. 2012). However, the absence of a clearly articulated explanation in the initial IFR and application form does not convince the Court that the explanation in the Fourth IFR, promulgated mere weeks later and fully consistent with the more generalized discussion of the process in the First IFR, was developed after the fact as a post hoc rationalization of the action.  *Cf. State Farm*, 463 U.S. at 4 (noting "a decision of less than ideal clarity" must be upheld "if the agency's path may reasonably be discerned").

record that is made initially in the reviewing court." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).  However, an agency may be permitted to supplement the administrative record when the existing record is not sufficient to explain the agency's decision.  *Midwater Trawlers Coop. v. Dep't of Commerce*, 393 F.3d 994, 1007 (9th Cir. 2004).  The reviewing court may accept affidavits or testimony to provide additional explanation of the agency's reasoning if necessary to permit judicial review.  *Id.* (citing *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450; *Camp v. Pitts*, 411 U.S. 138, 142–43 (1973) (per curiam)).  However, the agency is limited to offering "'a fuller explanation of the agency's reasoning *at the time of the agency action*' . . . the agency may elaborate later on that reason (or reasons) but may not provide new ones." *Regents*, 140 S. Ct. at 1907 (citation omitted) (emphasis in original).

Here, the Miller Declaration provides an explanation for the bankruptcy exclusion in Form 2483.  Miller Decl. ¶ 17.  The explanation highlights several reasons for the exclusion, including the need to provide loan assistance expeditiously with as little as possible underwriting; the issues involved in approving companies in bankruptcy for loans that would slow the administration of the PPP; and the potential risk for interference with the authorized use of PPP funds caused by bankruptcy.  *Id.*  The Court finds that the declaration merely provides "a fuller explanation of the agency's reasoning at the time of the agency action[s]," *Regents*, 140 S. Ct. at 1907, that is, the issuance of the IFRs and application form excluding debtors in bankruptcy proceedings.

Accordingly, the Court finds it can consider the Miller Declaration, although given the limited additional information provided in the declaration, it is not dispositive to the Court's conclusion.

### ii. Arbitrary and Capricious Review

The Court first considers Vestavia's arguments relating to the decisionmaking process.  Vestavia appears to take issue with the SBA's procedure for adopting the rules, noting that they were "hastily made up" without a notice and comment period.  However, Congress explicitly instructed the SBA to forgo the standard notice and comment

rulemaking process provided in the APA and to issue the first regulations within 15 days. 15 U.S.C. § 9012.  Although this fact does not absolve the agency of its responsibility to consider relevant factors and make sound judgments, the expedited rulemaking process in this case does not, on its own, suggest that the SBA's decision was arbitrary or capricious.  *Cf. Penobscot Valley Hosp.*, 2021 WL 150412, at *12 ("Because Congress dispensed with the notice-and-comment procedures prescribed by 5 U.S.C. § 553 and required the Administrator to promulgate rules within fifteen days, the Court does not fault the SBA for failing to seek expert opinions or to conduct hearings.").

Next, the Court turns to whether the SBA considered a factor Congress did not intend it to consider.  The agency's decision must be tied to the purposes of the law it seeks to implement.  *See Judulang v. Holder*, 565 U.S. 42, 55 (2011).  Consistent with the Court's findings above, the relevant purposes here include not only those purposes explicitly championed in the CARES Act but also those underlying the Section 7(a) statutory scheme for small business loans that Congress modified, but left partially intact, in creating the PPP.  Therefore, as the Court disagrees with the bankruptcy court's conclusion that the CARES Act discontinued the sound value requirement for PPP loans, the Court also departs from its reasoning with respect to whether the SBA was permitted to consider collectability.  Although the CARES Act structured the PPP so that all businesses could receive loan forgiveness if they use the funds for specified purposes, the statute presumes that not all loans will ultimately be fully forgiven.  *See* 15 U.S.C. § 636(a)(36)(K) (setting minimum and maximum maturity for loans that have "a remaining balance after reduction based on the loan forgiveness amount"); *compare* 15 U.S.C. § 636(a)(36)(F)(i) (listing eleven 'allowable' uses) *with* 15 U.S.C. § 9005(b) (listing four types of forgivable costs).  Congress likely did not intend the SBA to consider collectability as a primary factor in implementing the PPP, given that it relaxed several other requirements that relate to a borrower's creditworthiness and that most loans would not need to be repaid absent widespread use of funds for non-forgivable purposes. However, as Congress still situated the PPP as a loan program within an existing

statutory structure that required the SBA to ensure loans were of sound value, the Court does not find that Congress intended the SBA to ignore collectability altogether.

However, that does not end the analysis of the first *State Farm* factor.  The bankruptcy court's opinion suggests that based on the SBA's own statements in the First IFR, the SBA did not appear to genuinely consider collectability at all, making its explanation for the decision to exclude bankruptcy debtors unconvincing.  Adv. No. 20-90073-LA, ECF No. 27 at 15.  As the bankruptcy court explained, the SBA eliminated typical underwriting requirements by excusing lenders from complying with 13 C.F.R. § 120.150, which requires the loan applicant to be creditworthy and sets out a number of qualitative factors that the SBA will consider, and instead allowed lenders to rely on certifications of the borrower.  85 FR 20811-01.  The Court does not interpret the SBA's decision to forgo its typical lending criteria as inconsistent with its assertion that it continued to consider collectability in promulgating rules for the PPP.  As the First IFR recognized, the intent of the CARES Act was to provide relief expeditiously.  85 FR 20811-01.  The considerations in 13 C.F.R. § 120.150 require a detailed individualized evaluation of the applicant's business and finances.  13 C.F.R. § 120.150.  That the SBA allowed lenders to rely on the applicants' certifications and made the eligibility requirements less stringent than they would be for typical SBA loans does not suggest that the SBA viewed collectability as irrelevant, but rather reflects an accommodation of competing policy concerns.  *See Ass'n of Am. Railroads v. Surface Transp. Bd.*, 161 F.3d 58, 66 (D.C. Cir. 1998) (citing *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981)) (noting that an "agency has discretion to weigh competing policies under its statute")

Vestavia also contends that the SBA did not consider the protections provided by bankruptcy proceedings, and thus failed to consider an important aspect of the problem.  The SBA counters that it did take bankruptcy protections into consideration in promulgating its rules and simply determined that the risks of non-repayment and unauthorized use of funds outweighed those protections.  Given that the SBA decided to exclude bankruptcy debtors because of concerns about the potential misuse of funds and

inability to repay, the protections of the bankruptcy process were undoubtedly important; after all, if these protections eliminated the risks of lending to debtors in bankruptcy, the SBA's exclusion would be illogical.  However, the administrative record does not reflect that the SBA failed to consider bankruptcy procedures.  For other Section 7(a) loans, the SBA intends lenders to consider a borrower's bankruptcy history in determining whether to extend an SBA loan, but lenders have discretion over what weight to give that factor, presumably based on the particular risks presented by each case.  *See* Form 1919; Miller Decl. ¶ 11–13.  In adopting the bankruptcy exclusion for the PPP, the SBA eliminated much of the nuance from its normal process, which would have allowed the SBA or lenders to balance risks posed by bankruptcy generally against procedural protections of the bankruptcy case.  That the SBA ultimately chose to prioritize processing applications quickly over a more accurate accounting of the risks presented by particular bankruptcy cases does not mean that the SBA did not consider the protections of the bankruptcy process.

That said, even if the SBA considered the factors Congress intended, the bankruptcy exclusion rules must be invalidated if the agency's explanation is inconsistent with the evidence before it or otherwise "so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *State Farm*, 463 U.S. at 43. Vestavia argues that the rule excluding debtors in bankruptcy proceedings is illogical or counter to the evidence for a number of reasons.  Vestavia points to the fact that the SBA chose to exclude all current debtors in bankruptcy proceedings, which it does not do for other loans under Section 7(a), while eliminating a number of other creditworthiness requirements.  As the bankruptcy court agreed, bankruptcy debtors receive more oversight than other struggling businesses, so excluding them runs counter to the SBA's argument that it wanted to exclude businesses that were likely to misuse funds. Additionally, Vestavia notes, nothing stops businesses from declaring bankruptcy immediately after getting a loan, or from debtors in an active bankruptcy proceeding from dismissing their bankruptcy case, obtaining a PPP loan, and refiling.  Vestavia also

contends that the PPP rollout has been characterized by rampant fraud and misdirection of funds, so the SBA's exclusion of bankruptcy debtors was clearly ill-suited to meet its goals.[8]

Vestavia makes compelling points as to the shortcomings of the SBA's rules, but the Court cannot "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. The SBA, in administering other loans under Section 7(a), has lenders consider an applicant's creditworthiness, including by requesting information related to an applicant's bankruptcy history. *See* Form 1919. This reflects the SBA's position that extending loans to some debtors in bankruptcy proceedings would run counter to the requirement that all loans be of sound value as to reasonably assure repayment. 85 Fed. Reg. 23450; Miller Decl. ¶¶ 11–13. In implementing the PPP, the SBA considered the need to disburse loans quickly to a much larger group of applicants, all of which faced financial difficulties as a result of the coronavirus pandemic. 85 Fed. Reg. 20811; 85 Fed. Reg. 23450. The SBA also took into account the baseline sound value requirement and the fact that although the loans were intended to be forgiven, not all would be, given that businesses may end up using for unauthorized purposes or allowable, but not forgivable, uses. *Id.* The SBA therefore considered the risks companies in bankruptcy would pose to the authorized use of PPP loans and collectability, including the fact that some creditors in bankruptcy may be able to assert claims to PPP loan funds, and the challenges of inquiring into the state of individual bankruptcy proceedings in a timely manner. Miller Decl. ¶ 17. The result—an easing of some creditworthiness requirements but adoption of a bright-line rule excluding bankruptcy debtors—was, according to the SBA, an accommodation of these competing considerations.

---

[8] Although the Court may consider post-rulemaking developments, "[a] reviewing court must tread cautiously in considering events occurring subsequent to promulgation of a rule" because such events could not have directly informed the decisionmaking process. *Amoco Oil Co. v. Envtl. Prot. Agency*, 501 F.2d 722, 729 n.10 (D.C. Cir. 1974).

The Court cannot conclude that the SBA made a "clear error of judgment" in adopting the bankruptcy exclusion. *Judulang*, 565 U.S. at 53. The SBA's explanation that it decided to adopt the bright-line rule to maintain some its sound value requirements while allowing for efficient administration is not implausible or contrary to the evidence. *See Gateway II*, 983 F.3d at 1263. While some PPP loans were ultimately granted to businesses that had more potential to misuse the funds than those in bankruptcy, this demonstrates that the SBA's decision to forgo stricter lending requirements in favor of a streamlined application process was, in hindsight, ineffective at achieving its goal of ensuring that funds be put towards authorized purposes. But the agency's decision that businesses in bankruptcy, on the whole, should be considered loan risks is not counter to evidence or implausible merely because other applicants *also* should have been considered loan risks. The SBA potentially could have developed a rule that better balanced the need to proceed quickly with the need to discern, on a more targeted basis, which businesses were likely to misuse funds or be unable to repay. However, an agency working on a compressed timeline and with limited opportunity for factfinding cannot be expected to promulgate a rule with the same level of nuance as one developed as a result of a full notice-and-comment rulemaking process.[9] *See Diocese of Rochester*, 466 F. Supp. 3d at 381; *Penobscot Valley Hosp.*, No. 19-10034, 2021 WL 150412, at *12. The Court does not "rubber stamp" agency action under *State Farm*, but it cannot substitute its own judgment for that of the agency—for the Court's purposes, it is enough that the agency made relevant considerations and and came to a reasoned decision. *City of Los Angeles v. Barr*, 929 F.3d 1163, 1181 (9th Cir. 2019). Vestavia has not shown the SBA failed to do so here.

---

[9] Although interpreting an emergency rulemaking provision in the context of the Endangered Species Act, admittedly a very different statutory context, the Court finds apt the D.C. Circuit's observation that "scrutiny of such emergency regulations is . . . less exacting on the Secretary than it would be if he enacted precisely the same regulation and gave the same explanation after normal rulemaking." *City of Las Vegas v. Lujan*, 891 F.2d 927, 932 (D.C. Cir. 1989).

Accordingly, the Court finds that the bankruptcy court erred in determining that Vestavia was likely to succeed on its claim that the SBA's decisions were arbitrary or capricious under Section 706(2)(A).

### D. Likelihood of Success on the Merits of the 11 U.S.C. § 525(a) Claim

Vestavia argues that in the alternative, the Court should uphold the bankruptcy court's preliminary injunction order on the grounds that the bankruptcy exclusion violates the non-discrimination provision in 11 U.S.C. § 525(a). In relevant part, Section 525(a) provides:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act[.]

11 U.S.C. § 525(a).

Vestavia contends that the PPP loans should be considered a "grant" under this section, and therefore that the SBA violated the non-discrimination provision by denying such a grant to Vestavia on account of its bankruptcy status. The SBA argues that a PPP loan is not a "grant" under the provision. The SBA asserts that its position is confirmed by the Appropriation Act's inclusion of a new subsection that extends the non-discrimination rule to certain portions of the CARES Act, but not the PPP. 11 U.S.C. § 525(d). The bankruptcy court concluded that the SBA did not violate Section 525(a), finding that the word "grant" in Section 525(a) did not encompass economic grants like PPP loans.

The Court agrees with the bankruptcy court's reasoning. Even if the Court agreed with Vestavia's characterization of the PPP funds as a grant rather than a loan,[10] the

---

[10] But as the court in *Tradeways* explains, "the mere existence of favorable forgiveness terms in the CARES Act does not transform a PPP loan into a grant." *Tradeways*, 2020 WL 3447767, at *17.

language "other similar grant" requires that the term "grant' be limited only to grants that are similar to licenses, permits, charters, or franchises.  11 U.S.C. § 525(a).  A license, permit, charter, or franchise generally enables the grantee to conduct or engage in a certain type of business.  *See Ayes v. U.S. Department of Veterans Affairs*, 473 F.3d 104 (4th Cir. 2006) (citation omitted) (licenses, permits, charters, and franchises all "implicate government's role as a gatekeeper in determining who may pursue certain livelihoods.").  Vestavia has not explained how the PPP is grant "similar" to the other grants listed in Section 525(a).  Although PPP funds would undoubtedly affect a business's operations, the inability to receive one does not foreclose the person or entity from engaging their chosen livelihood, as the inability to obtain a license to operate or a business charter would.  *See Tradeways*, 2020 WL 3447767, at *18–19 (citing *Ayes*, 473 F.3d at 109).  While some courts have read the provision to include any grants that are only obtainable from the government and are essential to a debtor's fresh start, extending this interpretation to a forgivable loan would seem to create a broad standard unmoored from the text of the statute, stretching the term "similar" too far.  *See In re Springfield Hosp., Inc.*, 618 B.R. 70, 90–91 (Bankr. D. Vt. 2020), *motion to certify appeal granted*, 618 B.R. 109 (Bankr. D. Vt. 2020) (citing *In re Stoltz*, 315 F.3d 80, 90 (2d Cir. 2002)).  The Court's reading is confirmed by the fact that there is a parallel non-discrimination provision prohibiting a governmental unit from denying "a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor."  11 U.S.C. § 525(c)(1).  If 11 U.S.C. § 525(a) extended to all economic grants, the reference to "student grant" in Section 525(c)(1) would be superfluous.

The Court thus finds that the bankruptcy court did not err in determining that Vestavia was unlikely to succeed on the merits of its claim under 11 U.S.C § 525(a).

### E. Resolution of Appeal

The Court therefore finds that Vestavia has not shown it is likely to succeed on the merits of its claims under the APA or 11 U.S.C. § 525(a).  Accordingly the Court finds

20-cv-01308-GPC-LL
Adv. No. 20-90073-LA

that the bankruptcy court erred in entering the preliminary injunction against the SBA. The Court accordingly VACATES the preliminary injunction order.

### **Withdrawal of the Reference**

Having resolved the appeal, the Court considers the SBA's motion to withdraw the reference to the bankruptcy court.

## III.   **Legal Standard**

District courts have original jurisdiction over "all civil proceedings arising under title 11," which is the Bankruptcy Code, as well as over cases "arising in or related to cases under title 11." 28 U.S.C. § 1334(a)–(b). However, a district court may refer such proceedings to a bankruptcy judge. 28 U.S.C. § 157(a); *see also Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). "In the Southern District of California, all bankruptcy cases are automatically referred to the bankruptcy court." *In re We Ins. Servs., Inc.*, No. 3:19-CV-1007-CAB, 2019 WL 2436428, at *1 (S.D. Cal. June 11, 2019). Reference to the bankruptcy court may be withdrawn in certain circumstances. Under 28 U.S.C. § 157(d):

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

The second sentence of Section 157 "*mandates* withdrawal in cases requiring material consideration of non-bankruptcy federal law." *Sec. Farms*, 124 F.3d at 1008 (emphasis in original). The Ninth Circuit has not clearly addressed the application of the mandatory withdrawal provision, *see In re Tamalpais Bancorp*, 451 B.R. 6, 8 (N.D. Cal. 2011), but "[o]verwhelmingly courts and commentators agree that the mandatory withdrawal provision cannot be given its broadest literal reading, for sending every proceeding that required passing 'consideration' of non-bankruptcy law back to the

district court would 'eviscerate much of the work of the bankruptcy courts.'" *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 952 (7th Cir. 1996) (quoting *In re Adelphi Inst., Inc.*, 112 B.R. 534, 536 (S.D.N.Y. 1990)).  Most district courts in California have followed the standard set out by the Seventh Circuit in *Vicars*.  *See Tamalpais*, 451 B.R. at 8 (collecting cases).  That case set forth the "substantial and material consideration" test, holding that "mandatory withdrawal is required only when [non-title 11] issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *Vicars*, 96 F.3d at 954.  "The legal questions involved need not be of 'cosmic proportions,' but must involve more than mere application of existing law to new facts." *Id.* (internal citation omitted).  "Withdrawal is not mandated when the case involves the 'straightforward application of a federal statute to a particular set of facts.  It is issues requiring significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge.'" *In re 3dfx Interactive, Inc.*, No. C 05-00427 JW, 2005 WL 1074407, at *3 (N.D. Cal. May 6, 2005) (quoting *Vicars*, 96 F.3d at 953 n.5); *see also One Longhorn Land I, L.P. v. Presley*, 529 B.R. 755, 760 (C.D. Cal. 2015) ("[T]he consideration of non-bankruptcy federal law must entail more than 'routine application' to warrant mandatory withdrawal.").  The party seeking withdrawal bears the burden of persuasion.  *In re First All. Mortg. Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001).

## IV.   Discussion

The SBA argues that withdrawal of the reference of the adversary proceeding is mandatory under 28 U.S.C. § 157(d), and that withdrawal of the reference is also required because the bankruptcy court exceeded its constitutional authority.  Vestavia opposes, and counters that the SBA's motion for withdrawal of reference is untimely.

### A. Timeliness of Filing

As a preliminary matter, the Court considers whether the motion for mandatory withdrawal of the reference was timely filed.  Vestavia argues that the motion is untimely

and that withdrawal of the reference is improper because the preliminary injunction order was appealed.  The SBA argues that there was no material delay before its filing of the motion for withdrawal of the reference, and that the filing of this appeal does not affect the motion.

Section 157(d) requires that motions to withdraw be "timely."  28 U.S.C. § 157(d). "A motion to withdraw is timely if it was made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms*, at 1007 n.3.  As one court has put it, "[t]he fair intendment of the statute in question is to insure that the request for withdrawal be filed as soon as practicable after it has become clear that 'other laws' of the genre described in 28 U.S.C. § 157(d) are implicated, so as to protect the court and the parties in interest from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics. Once it becomes apparent, such an issue is in the case, a party has a plain duty to act diligently—or else, to forever hold his peace." *In re Gen. Teamsters Warehousemen & Helpers Union Local 890*, No. 5-90-03823 ASW, 1994 WL 665288, at *4 (N.D. Cal. Nov. 8, 1994) (quoting *In re Baldwin-United Corp.*, 57 B.R. 751 (S.D. Ohio 1985)).  "Courts have found a motion to withdraw the reference untimely when a significant amount of time has passed since the moving party had notice of the grounds for withdrawing the reference or where withdrawal would have an adverse effect on judicial economy." *Hupp v. Educ. Credit Mgmt. Corp.*, No. 07CV1232WQH(NLS), 2007 WL 2703151, at *3 (S.D. Cal. Sept. 13, 2007) (citing cases).

In interpreting the timeliness requirement, courts have focused not just on the absolute amount of time that has passed, but the extent of the proceedings that have already occurred in the case. *See In re Grace Miles*, No. C 10-0940 SBA, 2010 WL 3719174, at *2 (N.D. Cal. Sept. 17, 2010) (finding delay of "close to a year" before filing motion to withdraw not timely because "withdrawing the reference at this juncture, after extensive proceedings already have taken place, would likely have an adverse [effect] on judicial economy and the administration of justice"); *In re Woodside Grp.*, LLC, No. CV

10-222-VBF(X), 2010 WL 11596179, at *2 (C.D. Cal. May 21, 2010) (finding that motion filed eight months after complaint not timely "[c]onsidering the substantial activity and progress in the bankruptcy proceeding" and fact that "[b]ecause Defendants did not move to withdraw the reference until after the resolution of the preliminary injunction matter against them, there are also concerns that their request is motivated by forum shopping").

Here, the complaint was filed on May 27, 2020, and the motion for withdrawal of reference was filed in the bankruptcy court on July 29, 2020.  Adv. Case No. 20-90073, ECF Nos. 1, 45.  The non-bankruptcy issues were apparent from the face of the complaint.  The SBA's delay was therefore at most two months, which is not a particularly long period of time.  This Court has identified only one case in which a similar delay rendered a motion to withdraw the reference untimely.  *See In re Great N. Paper, Inc.*, 323 B.R. 7, 10 (D. Me. 2005) (finding that motion to withdraw filed less than three months after complaint was untimely, and noting that movant "should have raised the section 157(d) motion in response to that complaint, rather than waste the bankruptcy court's time with other issues and engender unnecessary delay").  Despite the dearth of case law suggesting a two-month delay may cause the motion to be untimely, the Court recognizes that during those two months, significant proceedings occurred in the bankruptcy court.  Indeed, Vestavia obtained essentially all of the relief it sought in the adversary proceeding when the bankruptcy court granted the preliminary injunction.  However, by their nature, proceedings on a motion for a temporary restraining order or preliminary injunction tend to occur extremely soon after the filing of a complaint.  The situation at hand does not suggest that the SBA let proceedings drag on, such that the July filing of the motion for withdrawal of the reference reflects a lack of diligence.  Additionally, the case has not proceeded so far in bankruptcy court that withdrawal of the reference at this stage would impair judicial economy, as most of the issues dealt with by the bankruptcy court were before this Court on appeal.

The Court notes Vestavia's argument that a court cannot serve as both the trial

court and appellate court in the same case.  However, the Court disagrees that the authorities cited by Vestavia stand for a categorical rule that the reference cannot be withdrawn once appeal of an order for interim relief has been taken.  *In re Powelson*, 878 F.2d 976 (7th Cir. 1989), dealt with the permissive withdrawal standard, which has the same timeliness standard, but also commits to the district court more discretion in determining whether withdrawal of the reference is appropriate.  *Powelson*, 878 F.2d at 983.  No such discretion exists when the case meets the standard for mandatory withdrawal.  *See Sec. Farms*, 124 F.3d at 1008; 28 U.S.C. § 157(d).

The Court therefore concludes that the motion for withdrawal of the reference is timely.

**B. Mandatory Withdrawal**

The SBA argues that the reference must be withdrawn because the case requires material consideration of non-bankruptcy law, given the complex issues of statutory interpretation involved.  Vestavia argues that the APA analysis is straightforward and thus mandatory withdrawal of the reference not required.[11]

As the forgoing discussion of the issues on appeal demonstrates, the adversary proceeding arising in part under the APA does, by necessity, call for interpretation of the non-bankruptcy law—most significantly, the CARES Act.  Vestavia's argument, that the CARES Act "requires no interpretation," Case No. 20-cv-1824-GPC-LL, ECF No. 1-2 at 14, is not particularly convincing because APA analysis always requires the court to consider Congressional intent by interpreting the statute.  5 U.S.C. §§ 706(2)(A)(i), 706(2)(C).  Additionally, Vestavia's argument that the case centers on the rules passed by the SBA, rather than the CARES Act, does not square with the fact that the Court must determine whether the CARES Act authorizes the rules at issue.  This is not a case

---

[11] Vestavia presents a number of other arguments that pertain to the permissive withdrawal of the reference standard.  The Court does not find these arguments relevant to its adjudication of the motion for mandatory withdrawal of the reference.

involving the application of settled law to new facts, but rather the application of the APA to the interpretation of a new law. It would artificially confine the statutory language of Section 157(d) to build in a requirement that the proceedings involve not only substantial and material federal law issues and interpretation of non-title 11 statutes, *Vicars*, 96 F.3d at 954, but that those issues be unusually difficult to resolve. *See In re ComUnity Lending, Inc.*, No. C 08-00201 JW, 2008 WL 11410087, at *2 (N.D. Cal. June 5, 2008) ("Mandatory withdrawal does not turn on the amount of judicial efforts involved but on whether the issue to be decided involve significant and material questions of non-bankruptcy federal law."). Although the *Chevron* and *State Farm* inquiry into the CARES Act is not a federal law issue "of cosmic proportions," it does require substantial analysis of non-bankruptcy law.[12] *Vicars*, 96 F.3d at 954.

Vestavia cites one bankruptcy court decision that suggested mandatory withdrawal of the reference is not appropriate in this context. In *In re Body Renew*, the bankruptcy court noted that "the court is merely applying the APA to the PPP," that there are a "considerable number [of] decisions on the subject," and that the proceeding "also includes a claim that the SBA's administration of the PPP violates 11 U.S.C. § 525," and thus the court was "skeptical whether this case must be withdrawn." *In re Body Renew Alaska, LLC*, Nos. 20-00075 GS, 20-90005 GS, 2020 Bankr. LEXIS 1899, at *6–7 (Bankr. D. Alaska July 14, 2020). As to the court's first point, this reading of the "substantial and material consideration" test seems to conflate the "application of existing law to new facts" with the application of a legal standard to the interpretation of another law. *Vicars*, 96 F.3d at 954. Further, although a number of bankruptcy court and district court decisions have dealt with the PPP, the law is far from settled enough to render the complex issues in this case a "straightforward application." *Id.* at 953 n.5. With respect

---

[12] Additionally, Vestavia's suggestion that a bankruptcy court is better equipped to evaluate whether the SBA's rulemaking was arbitrary and capricious runs counter to *State Farm*'s mandate that courts not substitute their own policy judgment for that of the agency. *State Farm*, 463 U.S. at 43.

to the *Body Renew* court's last point, the inclusion of a claim arising in bankruptcy law is explicitly contemplated by the mandatory withdrawal standard.  28 U.S.C. § 157(d) (withdrawal is mandatory if the "proceeding requires consideration of *both* title 11 and other laws.") (emphasis added).  The Court therefore declines to adopt the reasoning of the *Body Renew* court.

Accordingly, the Court GRANTS the motion to withdraw the reference.

<u>**Conclusion**</u>

For the reasoning set forth above, the Court hereby:

1. **VACATES** the bankruptcy court's order granting the motion for a preliminary injunction;

2. **GRANTS** the motion for withdrawal of the reference.

**IT IS SO ORDERED.**

Dated:  March 26, 2021

Hon. Gonzalo P. Curiel
United States District Judge